IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEWIS BARROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:12cv656-WHA |
| ) | (WO) |
| ANTHONY G. ELLIS, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On the last day of December 2010, the plaintiff Christopher Barrow and his wife were involved in an automobile accident on Highway US 231 in Pike County, Alabama. Barrow's wife died in the crash. The defendant Anthony Ellis is an Alabama State Trooper who was assigned as a traffic homicide investigator for this accident. After completing his investigation, Ellis requested and received arrest warrants for Barrow for the vehicular murder of his wife and for assault for injuries received by the driver of the other car involved in the accident. Barrow was arrested and jailed on January 12, 2011.

Barrow's arrest and incarceration gave rise to this 42 U.S.C. § 1983 damages action in which he contends that Ellis violated his Fourth Amendment rights in seeking the warrants which resulted in Barrow's false arrest and incarceration.[1]

The defendant filed a special report and supporting evidentiary materials addressing

---

[1] Ellis did not arrest Barrow. However, in this Circuit, a non-arresting officer who initiates or causes an unlawful arrest can be liable under the Fourth Amendment. *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007).

the plaintiff's claims for relief. The court thereafter informed the plaintiff that the defendant's special report may, at a future time, be treated as a motion for summary judgment and explained to the plaintiff the proper manner in which to respond to a motion for summary judgment, and the plaintiff has responded to the defendant's report.

Pursuant to the court's procedural orders, the court deems it appropriate to treat the defendant's report as a motion for summary judgment. Thus, this case is now pending on the defendant's motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, the complaint, the plaintiff's sworn responses to the report and relevant affidavits, the court concludes that the defendant's motion for summary judgment is due to be granted.

## FACTS[2]

On December 31, 2010, the plaintiff and his wife were driving on Highway US 231 when their vehicle drifted into the opposing lane of traffic resulting in a three-car collision. The plaintiff's wife died as a result of this accident. The plaintiff was also injured. Defendant Ellis is a homicide investigator who was dispatched to the accident scene where Barrow's wife's body remained in the car. Ellis saw that she was "partially ejected out of

---

[2] At this stage of the proceedings, this court takes the facts alleged by Barrow as the non-movant as true and construes them in the light most favorable to him. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party" and 'resolve all reasonable doubts about the facts in favor of the nonmovant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations. Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' ").

the passenger door . . . [and] that her left leg was pinned between the center tunnel and debris on the passenger side of the vehicle." (Doc. # 31-1 at 1).

Upon completing his work at the accident scene, Ellis went to the hospital and spoke with Barrow who stated that he was not driving but was asleep at the time of the accident. On January 2, 2011, Ellis again spoke with Barrow at the hospital.

> Barrow advised me that he and his passenger, Francene Nichole Phillips, were headed to Troy to pick up his daughter for the weekend. Barrow advised me that Phillips was driving because he was tired after getting off work earlier that day. I then asked Barrow what time he had gotten off work, and he stated that he had not worked that day. Barrow stated to me that he had fallen asleep in Brundidge and didn't wake up until Phillips stated, "Chris wake up!" Barrow stated that he had his seatbelt on and that the impact was so great that it knocked the engine from the car and Phillips from the driver's seat into the passenger's seat. Barrow advised me that because the impact was so great it undid his seatbelt and caused him to go straight up in the air and land on Phillips, whose left leg was pinned into the passenger compartment, in the passenger seat. I asked Barrow if he had consumed any alcohol or drugs during the day of the crash. Barrow stated to me that he had not used either the day of the crash.

(Doc. # 31-1 at 3-4).

Ellis continued his investigation, and the undisputed evidence confirms that he took the following actions. He interviewed the drivers of the other vehicles involved in the accident, but neither could provide information about who was driving Barrow's vehicle.[3] He obtained the air bag control module from Barrow's vehicle and permission to access the information. He interviewed Glenn House who had stopped to render assistance after the

---

[3] The registered owner of the vehicle was Barbara Phillips, the mother of Barrow's wife. For brevity's sake the court will refer to the vehicle as Barrow's vehicle.

accident. While House did not see the "entire" accident, he assisted Barrow from the wreckage. In his affidavit provided in support of Ellis' motion for summary judgment, House stated this.

> When I approached the vehicle I saw a female in the passenger seat and a male in the driver seat. The female was wedged between the door and the windshield of the vehicle and was partially ejected out the passenger window. It was quickly evident that the female passenger was deceased. The male was scrambling around in the driver seat. A gentleman from a nearby firework stand came to the car with a fire extinguisher and sprayed the fire extinguisher in the car. When this happened the driver of the vehicle because agitated and began trying to exit the vehicle. I assisted the male from the vehicle through the passenger window because the driver door would not open and I immediately noticed he sustained injuries to his hip. Once I assisted the driver from the vehicle I turned him away from the vehicle so he could not see the passenger's condition.

(Doc. # 31-2 at 1).

However, when interviewed by Ellis, House said to Ellis that "he could not say for sure if Barrow was driving or not . . . [but] when Barrow was asked if he had been driving, Barrow stated he was driving . . . [but] later on Barrow changed his story and said that he wasn't driving." (Doc. # 31-1 at 5).

Next, Ellis "forensically mapped" the vehicles involved in the accident and performed post-crash inspections. That investigation led him to conclude that neither Barrow nor his wife were wearing seat belts even though Barrow had stated he was wearing his belt.

Based on his investigation, Ellis concluded that Barrow was driving because his wife's left ankle was pinned in the passenger compartment and Barrow was pulled across his wife through the passenger side of the vehicle. Ellis requested arrest warrants for Barrow

for murder of his wife and for assault first degree for the injuries to one of the other persons involved in the accident. Barrow was later arrested and taken to jail.

According to Barrow, at a preliminary hearing, these charges were dismissed "due to the lack of probable cause. There were not witnesses to attend the preliminary hearing and the State Trooper Anthony G. Ellis didn't even attend . . ." (Doc. # 1 at 5). However, Barrow was later indicted for manslaughter and pled guilty to vehicular homicide.

## STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][4] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant

---

[4] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*.  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

     For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

## DISCUSSION

Ellis seeks summary judgment based on his claim that qualified immunity shields him from personal liability for Barrow's § 1983 claims. Qualified immunity shields government officials performing discretionary functions[5] from suits in their individual capacities unless their conduct violated clearly established statutory or constitutional rights. *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007). "This Circuit generally follows a two-step analysis to determine if qualified immunity applies to any [§ ] 1983 claim." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010). First, the court determines whether the defendant's conduct amounted to a constitutional violation; second, the court analyzes whether the right violated was "clearly established" at the time of the violation. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (reaffirming the validity of the two-step procedure, while noting that the judges of the district courts and the courts of appeals are in the best position to determine the most efficient order of applying the two steps).

"Police officers receive qualified immunity from false-arrest claims if they had

---

[5] There is no dispute about whether Ellis was acting within the course and scope of his discretionary authority when he sought warrants for Barrow's arrest. Barrow concedes this point. (Doc. # 34 at 11).

arguable probable cause to make the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [the][p]laintiff." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (internal quotation marks and citations omitted). "Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Id.* The criminal complaint filed by Ellis alleges that Barrow committed the murder of his wife.[6] Thus, the court turns to the elements of murder under Alabama law. ALA. CODE § 13A-6-2(a)(2) (1975) provides that

> A person commits the crime of murder if he or she does any of the following:
>
> Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.[7]

The court has set forth above the facts about Ellis' investigation of the accident. Among other things, Ellis determined that at the time of the accident Barrow's vehicle was

---

[6] The criminal complaint also alleged that Barrow committed assault in the first degree on a person in another vehicle involved in the accident. Because the court concludes that arguable probable cause existed regarding the murder charge, the court pretermits consideration of the assault charge.

[7] In addition, Alabama law, ALA. CODE § 32-5A-170 (1975), provides that

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

exceeding the speed limit, traveling 70 miles per hour in a 55 miles per hour speed zone. (Doc. # 34-1 & 34-7 at 1). In *Northington v. State*, 413 So.2d 1169, 1172 (Ala. Crim. App. 1981), the Alabama Court of Criminal Appeals described the function of Section 13A-6-2(a)(2) as including deaths "caused by such acts as driving an automobile in a grossly wanton manner . . ." And, Alabama courts have long held Section 13A-6-2(a)(2) applicable to automobile driving.

> A conviction for murder resulting from a homicide caused by the driving of an automobile is authorized where there is sufficient evidence to warrant a finding by the jury either that the accused intentionally caused the collision or that he was conscious of his acts, conscious of the impending danger surrounding him, and conscious of the probable results of his acts, and then, with reckless indifference to the probable consequences of his acts, brought about the collision and death of the deceased. *Jolly v. State*, 395 So.2d 1135 (Ala. Crim. App. 1981).

*Smith v. State*, 460 So.2d 343, 346 (Ala. Crim. App. 1984).

Barrow's vehicle crossed into the opposing lane of traffic while traveling at a high rate of speed. Under Alabama law, these facts are sufficient to establish at least arguable probable cause to believe that a violation of Section 13A-6-2(a)(2) occurred. This conclusion does not end the matter because Barrow continues to contest Ellis' conclusion that Barrow was the driver of the vehicle. However, as reflected above in the court's discussion of the facts, Ellis had ample reason to reach a contrary conclusion. Barrow's wife's leg was pinned on the passenger side of the vehicle. Ellis' investigation indicated that Barrow was pulled from the car across the body of his wife. These conclusions support Ellis' belief that Barrow was driving.

11

Barrow's protestations about whether he actually committed a crime are not relevant. Whether a crime actually was committed is irrelevant; rather, the proper inquiry asks whether objective facts known to the officer supported probable cause to make an arrest. *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 8 (11th Cir. 2001). Thus, even if Ellis' determination about whether Barrow committed murder turned out to be wrong under Alabama law,[8] it makes no difference. "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.' " *Id.* The court concludes that this standard was met in this case.

Barrow does raise some contentions which must be addressed. Barrow argues that Ellis was "reckless and very dishonest" because he acted on his own "suspicions with no essential facts that could harbor an objectively reasonable basis for the issuance of a (sic) arrest warrant." (Doc. # 1-2 at 2-3). This argument is apparently based on Barrow's primary complaint that Ellis possessed no "first hand knowledge of this event." *Id.* at 3. *See also* Doc. # 34 at 11. In addition, Barrow disparages Ellis' conduct of his investigation. (Doc. # 34 at 13). He does so by asking questions about which he says Ellis should have asked but did not. All of Barrow's arguments about personal knowledge and the nature of the

---

[8] There is no federal right not to be arrested in violation of state law. *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002).

investigation lead him to conclude that Ellis based his request for warrants on mere suspicion. Barrow is wrong.

Unquestionably, qualified immunity would not protect Ellis if Barrow had demonstrated that he made a deliberately or recklessly false statement. *Franks v. Delaware*, 438 U.S. 154 (1978). But the absence of Ellis' personal knowledge about all of the facts of the accident do not vitiate the probable cause determination. Hearsay may be used to establish probable cause. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Moreover, much of what Ellis relied upon to seek the warrants against Barrow was based on his knowledge derived from his personal investigation.

As noted, Barrow also assails Ellis' investigation because it was not thorough enough because Ellis did not ask questions Barrow contends should have been asked. But as *Gates* notes, probable cause does not require perfection. 462 U.S. at 246. Barrow's complaints about the investigation avail him nothing. Based on the foregoing discussion, the court concludes that Ellis had arguable probable cause to seek an arrest warrant for Barrow and, therefore, is protected from Barrow's claims for damages pursuant to 42 U.S.C. § 1983.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Ellis' motion for summary judgment (doc. # 31) be granted and that this case be dismissed with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 17, 2015**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 3rd day of September, 2015.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE